CASE 12—PETITIONS EQUITY—October 1.

## Johnson v. Cantrill, &c.
## Johnson v. O'Hara, &c.

APPEAL FROM CALDWELL CIRCUIT COURT.

1. A WIDOW IS NOT ENTITLED TO DOWER in land of the husband which has been sold to satisfy a lien for purchase money; and if the land was sold to pay the purchase money for which a lien existed, it is not material whether a lien was asserted.

The land of a guardian, upon which his wards had a lien for purchase money, was sold in a proceeding against him under the act of 1856 to have certain transfers declared to operate as an assignment for the benefit of creditors, and in the distribution of the proceeds the claim of the wards was given a preference by virtue of the provision of the statute that debts due as guardian shall have priority, no lien being asserted by the wards. Held—That, although no lien was asserted, yet as the proceeds of the land were applied to the payment of the purchase money for which a lien existed, the widow of the debtor is not entitled to dower as against the purchaser.

2. WHERE A GUARDIAN BECAME THE PURCHASER OF HIS WARDS' LAND AT JUDICIAL SALE, and paid his obligation for the purchase money by charging himself with the amount in his settlement as guardian, the lien retained in the deed made by the Commissioner was

not thereby extinguished. And the fact that the report of the Commissioner shows that he had collected of the guardian the purchase money notes and had paid the money to those entitled, although confirmed by the court, does not estop the wards, or the purchasers of the land at the sale made to satisfy the claim of the wards, from insisting that the lien still existed. Nor would the guardian, if living and still owning the land, be heard to say, in an action against him by the wards to enforce the lien,[that he had paid the purchase money to the Commissioner, and the Commissioner handing it back to him, he had charged himself with the amount in his settlement and thereby destroyed the lien.

WM. MARBLE FOR APPELLANT.

1. The report of the Master Commissioner in the original suit that he had *collected* the purchase money and paid it out must, in the absence of anything to contradict it, be taken as true. Every officer, acting under the sanction of an oath, must be presumed to have done his duty until the contrary is proved. (Hickman v. Boffman, Hardin, 362.)

2. As the report of the Master Commissioner that the purchase money had been paid was confirmed by the court and that judgment has never been set aside or reversed that matter is *res judicata*. (1 Herman on Estoppel and Res Judicata, sec. 49.)

3. To bar the wife's dower the husband's land must be sold to satisfy the lien for purchase money. That it was sold to satisfy purchase money is not sufficient to bar dower. (Gen. Stats., chap. 52, art. 4, sec. 5; Scribner on Dower, vol. 1, p. 558, sec. 5; *Idem*, p. 559, sec. 6.)

F. W. DARBY FOR APPELLEES.

1. The guardian held two-sixths of the one hundred and thirty-seven acres of land in trust for the two younger wards, and, therefore, his widow is not entitled to dower. The guardian can not acquire an interest in his wards' property or estate adverse to or as against the interest of the ward. (1 Pomeroy's Equity, sec. 422; 2 Pomeroy's Equity, secs. 587 and 1049; Fawcett v. Fawcett, 1 Bush, 511; Edmunds v. Morrison, &c., 5 Dana, 223; Smith v. Maxwell, &c., 7 Mon. 602; Chanslor v. Chanslor, 11 Bush, 664.)

2. The widow can not have dower out of the surplus remaining after satisfying encumbrance where the surplus was received or disposed of by the husband in his lifetime. (Gen. Stats., chap. 52, art. 4, sec. 5; Tisdale v. Risk, 7 Bush, 139; Melone v. Armstrong, 79 Ky., 248.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

These are suits for dower and were heard together. The husband of the appellant was the statutory guardian of six children, and soon after his appointment he filed a

petition under the statute for the sale of their real estate, and when offered for sale became the purchaser. There was a conveyance made by the Commissioner retaining a lien for the purchase money under an order of court and, subsequently, his obligation for the purchase money was canceled. He proceeded in his several settlements to charge himself with the money received from the sale of the land, showing an indebtedness to the infants on his part that equaled the value of each child's interest in their father's estate. In a few years after the guardian purchased the land he became involved in debt, and by reason of certain transfers of his property his estate was adjudged to pass to creditors under the act of 1856. This was as far back as July, 1865. He settled with all of his wards except two of them, and their part of the purchase money, equivalent to two-sixths of the land (there being six children), remained unpaid.

It is insisted by counsel for the widow that the report of the Commissioner, showing that he had collected of Johnson, the guardian, his purchase money notes, and had paid it to those entitled, having been confirmed by the court, is conclusive of this case, and for the additional reason that the guardian had charged himself as guardian, in his county court settlements, with each of his wards portion of the land, and other property held by him. That the guardian at the time of his failure owed each of his wards a considerable sum of money clearly appears, and certainly the greater part of it was on account of his indebtedness for the land. In the proceeding under the act of 1856, this land was sold as the land of the husband of the appellant, and purchased by the vendor of the appellees. The land was sold without specifying the debts

it was sold for, and without any averment in the plead-
ings that the debts owing the two wards were purchase
money for this land, and that a lien existed which should
be enforced.

It is evident that four-sixths of the purchase money
had been paid, and equally as apparent that Johnson,
the husband of the appellant, owed the wards for the
remaining two-sixths by reason of his purchase. John-
son was insolvent, had never paid his wards for the
land, and by his own act as purchaser could not de-
prive them of their right to enforce a lien for the pur-
chase money. The record of the action in which he pur-
chased the land, reciting that he had paid for it, works no
estoppel on the part of these wards or as against the pur-
chaser from the guardian. What does this record show?
It shows that the receipt of the purchase money was
acknowledged and so reported by the Commissioner and
confirmed by the court, but it further appears that the
guardian was only paying this money to himself.
He charged himself with it in the county court settle-
ments, and if he paid it in any other way he, or those assert-
ing rights under him, must show it. He held this land,
notwithstanding he purchased it as trustee for these chil-
dren, and, if living, in an action against him to enforce a
lien could not be heard to say that he had paid this money
to the Commissioner (if such was the fact), and the Com-
missioner handing it back to him he had charged himself
with the amount owing in his settlement, and thereby
destroyed the lien. Nor was it necessary to allege fraud
or mistake, in order to reach the land by enforcing the
lien. There was no fraud or mistake, as the facts devel-
oped show that the husband made the purchase in good

faith, and paid the money by charging himself with the purchase money in his settlement. It is not a mere assumption or inference that he did so, but a conclusion that necessarily follows from the admitted facts. If, therefore, these infants had a lien and their claims were preferred, what right has the widow to dower? It may be argued that under the act of 1856 the claims of the infants were preferred because the money was owing by the guardian in his fiducial capacity. This can not affect the question. Did these infants have a lien, and was the land sold to satisfy the purchase money? That it was sold to pay the purchase money by the Chancellor is evident. There was no other estate out of which to pay it, and the fact that the judgment or the pleadings failed to show that it was to enforce the lien, does not prevent the vendor of the husband or of the Chancellor from showing that his money satisfied the lien.

Our statute provides that the wife shall not be endowed of land sold to satisfy a lien for the purchase money. (Chapter 52, General Statutes, article 4, section 5.) This was intended to prevent the claim of dower from being asserted against the vendors' lien, and these parties appellee whose vendor bought the land, and whose money was applied to discharge the lien, must be protected to the same extent that a purchaser from Johnson would have been if Johnson had sold it to satisfy the lien. This is the spirit and meaning of the statute, and it would be unconscionable to allow the widow dower in land as against the vendee of the husband, when by his purchase his money is applied to the discharge of the lien then upon it. It would be no answer to the infants by the insolvent guardian to say, that under his purchase

he had acquired an absolute title, and they must look to the sureties on his bond as guardian and not to the land.

In our opinion the widow was not entitled to dower in two-sixths of the land.

Judgment affirmed.